1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Attorney
3  BLAKE P. LOEBS, State Bar #145790
   WARREN METLITZKY, State Bar # 220758
4  Deputy City Attorneys
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-3868  Loebs
6  Telephone:    (415) 554-3916  Metlitzky
   Facsimile:    (415) 554-3837
7

   Attorneys for Defendants
8  CITY AND COUNTY OF SAN FRANCISCO,
   CHIEF OF POLICE HEATHER FONG, OFFICER KEVIN HEALY,
9  OFFICER JON KASPER AND OFFICER ROBERT DOSS

10 John L. Burris, Esq. State Bar # 69888
   Adanté D. Pointer, Esq. State Bar # 236299
11 Law Offices of John L. Burris
   7677 Oakport Street, Suite 1120
12 Oakland, California  94621
   Telephone:  (510) 839-5200
13 Facsimile:  (510) 839-3882

14 Attorneys for Plaintiff
   EDWARD YAMOAH
15                          UNITED STATES DISTRICT COURT

16                          NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17  EDWARD YAMOAH,<br>             Plaintiff,<br>18<br>          vs.<br>19<br>   CITY AND COUNTY OF SAN FRANCISCO,<br>20 a municipal corporation; HEATHER FONG, in<br>   her capacity as Chief of Police for the CITY<br>21 AND COUNTY OF SAN FRANCISCO;<br>   KEVIN HEALY, individually and in his<br>22 capacity as a police officer for the CITY AND<br>   COUNTY OF SAN FRANCISCO; JASON<br>23 KRISTAL, individually and in his capacity as a<br>   police officer for the CITY AND COUNTY OF<br>24 SAN FRANCISCO; ROBERT DOSS,<br>   individually and his capacity as a police officer<br>25 for the CITY AND COUNTY OF SAN<br>   FRANCISCO; JON KASPER, individually and<br>26 in his capacity as a police officer for the CITY<br>   AND COUNTY OF SAN FRANCISCO; and,<br>27 San Francisco police officers, DOES 1-25,<br>   inclusive,<br>28            Defendants. | Case No. C07-06336 JCS<br><br>**JOINT SUBSEQUENT CASE MANAGEMENT STATEMENT**<br><br>Conf. Date:   July 25, 2008<br>Time:         1:30 p.m.<br>Place:        Crtrm A, 15th Fl.<br><br>Trial Date:   May 18, 2009 |

In response to the Court's Case Management Conference Order and Pretrial Order, dated April; 29 2008 and pursuant to Civil Local Rule 16-10(d) and in anticipation of the Subsequent Case Management Conference on July 25, 2008 in the above-captioned court, the parties submit the following Joint Subsequent Case Management Statement.

## Facts

Plaintiff seeks damages for false arrest and excessive force under the Fourth and Fourteenth Amendments of the federal Constitution; under California law for false imprisonment, assault and battery, intentional infliction of emotional distress, negligence; and the Unruh and the Bane Acts, California Civil Code §§ 51 *et seq*. and §52.1.

### Plaintiff's Statement of Facts

On the night of December 28, 2006, plaintiff Edward Yamoah, who at that time was a resident physician at Alameda County Medical Center Highland Hospital campus, was assaulted and battered by several San Francisco Police Officers in the parking lot of "Emerald Auto", an auto repair shop located in the City of San Francisco.

On the night in question, Mr. Yamoah was in the parking lot of Emerald Auto working on his car. As he was peering under the hood, a San Francisco Police Department patrol car pulled into the parking lot. Two Officers got out of the car. Mr. Yamoah greeted the officers and they told him to "shut up." The Officers ordered him to turn around and place his hands behind his back. The Officers then handcuffed him and conducted a pat search that yielded no contraband.

Mr. Yamoah informed the Officers that he had just graduated from UCSF medical school, that he lived nearby and had permission from Emerald Auto's owner to bring his car to the parking lot. Nevertheless, the Defendant Officers viciously grabbed Plaintiff about his right arm, kicked him in the leg and slammed his upper body against the car. The Officer then proceeded to search the car. That search yielded no contraband or weapons.

Next, two additional San Francisco Police Officers arrived at the scene. One of the Officers approached Mr. Yamoah and punched him with a closed fist on the right side of this chest. The force

1  of the blow dropped Mr. Yamoah to the ground.  Mr. Yamoah asked why the officer punched him, to
2  which the Officer responded "because he wanted to."
3      Another Officer arrived on scene and identified himself as the Officers' supervisor.  Mr.
4  Yamoah explained why he was in the parking lot and advised them that he could provide written
5  documentation proving he owned the car.  The Officers then took him to his residence.  Once at
6  home, Mr. Yamoah found the title to his car and showed it to the Officers.  The Officers finally took
7  the handcuffs off and left without so much as offering an apology.
8      As a result of this incident, Mr. Yamoah incurred a torn rotator cuff.  He later underwent
9  multiple surgeries and to this day has yet to regain full use and enjoyment of his right arm.  The
10 injury poses a significant challenge to his medical career and recreational pursuits.
11     Mr. Yamoah seeks damages for false arrest and excessive force under the Fourth and
12 Fourteenth Amendments of the federal Constitution; under California law for false imprisonment,
13 assault and battery, intentional infliction of emotional distress, negligence; and for violating the
14 Unruh Act and the Bane Act, California Civil Code § 51.7 and § 52.1.

15 **Defendants' Statement of Facts**

16     On December 28, 2006, at approximately 10:15 in the evening, SFPD Officers Healy and
17 Kasper responded to a complaint that a 6'2" African-American male with a dark cap and dark coat
18 was trying to steal a battery from a car in the Emerald Auto parking lot in the Sunset district of San
19 Francisco.  It was after-hours and Emerald Auto was closed.  The officers arrived at the scene and
20 observed Mr. Yamoah, who matched the description of the suspect, near an Acura and holding a
21 flashlight.  The officers identified themselves.  Yamoah refused multiple orders by the officers to
22 drop the flashlight.  Officers approached Yamoah and Yamoah repeatedly attempted to pull away
23 from officers when they tried to handcuff him for their own safety.  Officer Kasper injured his elbow
24 trying to handcuff Yamoah. Yamoah finally complied after he was told that he would be pepper
25 sprayed if he did not stop resisting.
26     After he was handcuffed, Officer Kasper instructed Yamoah to spread his legs so that he
27 could be searched for weapons.  After Yamoah twice refused, Officer Kasper tapped Yamoah's leg
28 with his foot, and Yamoah separated his legs.  Thereafter, while Yamoah and Officer Kasper were

1  between two cars, Yamoah began to approach the officers.  Yamoah was pushed back against a car by
2  Officer Kristal, who had arrived on scene, and Officer Kasper was able to gain better control over
3  Yamoah.  A short time later, Yamoah dropped to the ground and tried to twist away from the officers.
4  He was unsuccessful in escaping from the officers, and became compliant.  Officer Kasper asked
5  Yamoah if he was injured, and Yamoah responded that he was not.
6     At the scene, Yamoah stated at least once that he was a doctor.  He later explained to Sergeant
7  Doss that he knew that a "white woman" had called the police, and that he wanted to see how far the
8  officers would go.  He stated that he wanted to speak with his attorney because he was going to get
9  paid for this incident.  He also stated if he wanted to, he could have beaten the officers.
10    A vehicle check revealed that the Acura was not Yamoah's.  Yamoah took officers, including
11  Inspector Doss—who had arrived on scene—to his apartment nearby to find the DMV paperwork
12  demonstrating that the car had been sold to Yamoah.  The DMV paperwork was located, and
13  Sergeant Doss removed the handcuffs from Yamoah.  Yamoah complained that the handcuffs were
14  too tight, but he refused the offer for an ambulance, and refused to let any officer photograph his
15  wrists.

16  **Status and Progress of Case**

17     1.    Discovery:  The parties have commenced written discovery and anticipate taking party
18  and witness depositions.
19     2.    Service:  All parties have now been served.
20     3.    Mediation:  The Court granted the parties' stipulated order that mediation occur before
21  October 31, 2008.
22  ////
23  ////
24  ////
25  ////
26  ////
27  ////
28  ////

4. <u>Scheduling</u>: The parties are following the schedule set forth in the Court's April 29, 2008 Case Management Order.

Dated: July 18, 2008

                             LAW OFFICES OF JOHN L. BURRIS

               By:       /s/
                    ADANTE POINTER
                    Attorneys for Plaintiff
                    [The filer of this document attests that concurrence in the filing of this document has been obtained from defendant's attorney below, and shall serve in lieu of his signature.]

Dated: July 18, 2008

                    DENNIS J. HERRERA
                    City Attorney
                    JOANNE HOEPER
                    Chief Trial Deputy
                    BLAKE P. LOEBS
                    WARREN METLITZKY
                    Deputy City Attorneys

               By:       /s/
                    WARREN METLITZKY
                    Attorneys for Defendants